[Cite as *Nixon v. Quality Mold, Inc.*, 2011-Ohio-1658.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ERIC NIXON

    Appellee

    v.

QUALITY MOLD, INC., et al.

    Appellants

C. A. No.    25400

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2008 11 7976

DECISION AND JOURNAL ENTRY

Dated: April 6, 2011

---

BELFANCE, Presiding Judge.

{¶1} This matter is before the Court on Quality Mold, Inc.'s ("QMI") appeal from the order of the Summit County Court of Common Pleas that plaintiff-appellee Eric Nixon is entitled to participate in the Workers' Compensation Fund for the diagnosis of bilateral carpal tunnel syndrome contracted as a direct and proximate result of his employment at QMI. For reasons that follow, we affirm.

I.

{¶2} Eric Nixon filed a workers' compensation claim with the Bureau of Workers' Compensation ("BWC") that was allowed for bilateral carpal tunnel syndrome. QMI appealed, contesting the Industrial Commission of Ohio's finding that Mr. Nixon had an occupational disease contracted in the course of his employment at QMI.

{¶3} During the bench trial, the video deposition of Dr. Todd Aaron Zacour was presented to the court in lieu of his live appearance. Dr. Zacour testified that he had treated Mr.

Nixon for the pain in his arms and diagnosed him with bilateral carpal tunnel syndrome. Dr. Zacour also testified that he believed the disease arose as a proximate result of Mr. Nixon's work at QMI. After a bench trial, the court determined that Mr. Nixon did have such a disease and that he was entitled to participate in the Workers' Compensation Fund and also ordered QMI to pay Mr. Nixon's attorneys' fees and certain other costs. QMI appeals from that order.

II.

ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED IN CONSIDERING THE TESTIMONY OF THE MEDICAL WITNESS WHO TESTIFIED AND USED THE TERM 'POSSIBLE' AS TO WHETHER THE CLAIMANT CONTRACTED CARPAL TUNNEL SYNDROME."

{¶4} In its first assignment of error, QMI asserts that the trial court erred in considering the testimony of Dr. Zacour, apparently because Dr. Zacour testified that after his initial examination of Mr. Nixon, he determined that there was a possible diagnosis of carpal tunnel syndrome.

{¶5} Although QMI objected a number of times during Dr. Zacour's deposition testimony, it did not object to Dr. Zacour's statements about his opinions following his initial consultation with Mr. Nixon, nor to his use of the word "possible." Furthermore, to the extent that it objected during the deposition testimony, QMI did not properly put its objections before the court. Prior to trial, the court ordered the parties to submit their objections and supporting arguments, which QMI failed to do. QMI's objections were summarily overruled for failure to comply with the court's order. QMI has not argued that the trial court committed error in its pretrial ruling. Notwithstanding, because no transcript of the proceedings before the court is included in the record on appeal, it is not clear that QMI preserved this error for review. QMI has then forfeited all but plain error on appeal, but it has not argued plain error. Evid.R. 103(A),

(D); see *Dragway 42, LLC v. Kokosing Constr. Co.*, 9th Dist. No. 09CA0073, 2010-Ohio-4657, ¶26.

**{¶6}** Additionally, QMI does not point to legal authority supporting its apparent proposition that it is error for the trial court to consider a medical expert's testimony about possible diagnoses for a given set of symptoms as described by Dr. Zacour in this matter. We note that Dr. Zacour's testimony indicated that his opinion was that, within a reasonable degree of medical certainty, Mr. Nixon had bilateral carpal tunnel syndrome and that this condition was the proximate result of Mr. Nixon's work at QMI.

**{¶7}** QMI's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

"THE TRIAL COURT ERRED IN RULING THAT THE ONLY MEDICAL TESTIMONY PROVED BY A PREPONDERACE OF THE EVIDENCE THAT CLAIMANT GAVE THE MEDICAL EXPERT RELIABLE FACTS TO EXPLAIN THE NON-MEDICAL TERM REPETITIVELY."

**{¶8}** "Generally, an appellant's assignment of error provides this Court with a roadmap on appeal and directs this Court's analysis." *State v. Marzolf*, 9th Dist. No. 24459, 2009-Ohio-3001, ¶16. In its second assignment of error, QMI fails to provide this court with such an outline of the alleged error. While QMI appears to challenge a ruling by the trial court, the record contains no court rulings regarding the medical testimony other than the court's order summarily overruling QMI's objections for failure to submit them to the court as ordered.

**{¶9}** The argument in support of its second assignment of error focuses on Dr. Zacour's use of the word "repetitive[]" to describe Mr. Nixon's work for QMI. QMI does not, however, clearly articulate why Dr. Zacour's use of this word is problematic or set forth a standard of review that this Court should apply on appeal. It is not this Court's duty to develop

an argument in support of QMI's assigned errors. *Cardone v. Cardone* (May 6, 1998), 9th Dist. NO. 18349, at *8.

{¶10} Finally, we note that although QMI objected to Dr. Zacour's use of the term "repetitive" during his deposition testimony, the trial court did not reach the merits of this objection because QMI did not properly put its objections before the court. The record on appeal does not contain any indication that QMI objected when the deposition testimony was presented to the court. QMI has thus failed to demonstrate that this alleged error has been preserved for appellate review. QMI's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

"THE TRIAL COURT ERRED IN NOT ALLOWING THE DEFENDANT QUALITY MOLD, INC. TO INTRODUCE TESTIMONY INVOLVING THE TERMINATION OF EMPLOYMENT OF THE CLAIMANT ERIC NIXON."

{¶11} QMI asserts in its third assignment of error that the trial court erred in not allowing QMI to introduce testimony regarding Mr. Nixon's termination from QMI. QMI does not reference, however, where in the record the trial court made such a ruling. See App.R. 16(A)(3), (6), (7) (briefs must include references to the record in support of assignments of error, factual allegations, and arguments). We are therefore unable to determine, with certainty, what ruling or order QMI seeks to challenge in this assignment of error.

{¶12} Prior to trial, the court ruled that all testimony regarding Mr. Nixon's alleged termination or alleged job abandonment would be inadmissible because it was irrelevant to the issue before the court. QMI does not assert, in support of this third assignment of error, that such testimony would be relevant to the issues before the court at trial. Rather, QMI argues that it could have introduced testimony that would have called Mr. Nixon's credibility into question.

However, the testimony it claims is relevant to credibility concerns Mr. Nixon's reporting of his initial injury, not the circumstances surrounding his termination.

{¶13} Assuming that QMI had evidence calling Mr. Nixon's credibility into question, it has not directed this Court to that portion of the record where it was prevented from introducing evidence concerning Mr. Nixon's initial reporting of his injury. In addition, QMI has not directed this Court to any proffer of evidence that it sought to introduce concerning Mr. Nixon's credibility.

{¶14} Because the evidence that QMI now alleges it would have adduced at trial is unrelated to our review of the trial court's determination that termination evidence was inadmissible, and QMI has not explained why the court's ruling regarding termination evidence was incorrect, we overrule QMI's third assignment of error.

ASSIGNMENT OF ERROR IV

"THE COURT COMMITTED ERROR IN AWARDING ATTORNEYS FEES AND FURTHER ORDERING PAYMENT BY THE EMPLOYER, A STATE FUND RISK."

{¶15} QMI argues that the trial court erred in ordering QMI to pay Mr. Nixon's attorneys' fees. QMI does not contest Mr. Nixon's entitlement to fees, but rather whether QMI is required to pay Mr. Nixon directly or if Mr. Nixon must collect from the BWC, which will then pass the cost on to QMI. Because the procedures for awarding and collecting attorneys' fees in a workers' compensation case are set forth in statute, this is a question of law we review de novo. See *Porter v. Porter*, 9th Dist. No. 21040, 2002-Ohio-6038, ¶5 ("When reviewing whether a trial court correctly interpreted and applied a statute, an appellate court employs the de novo standard as it presents a question of law.")

**{¶16}** R.C. 4123.512(F) states:

"The cost of any legal proceedings authorized by this section, including an attorney's fee to the claimant's attorney to be fixed by the trial judge, based upon the effort expended, in the event the claimant's right to participate or to continue to participate in the fund is established upon the final determination of an appeal, shall be taxed against the employer or the commission if the commission or the administrator rather than the employer contested the right of the claimant to participate in the fund. The attorney's fee shall not exceed forty-two hundred dollars."

QMI asserts that the trial court should not have applied the clear language of the statute. QMI asserts that the payment of attorneys' fees is controlled by Ohio Adm. Code 4121-3-18(B)(2), which states that the fees will be paid by the BWC and that the BWC can recover those costs from the employer. In support, QMI refers to R.C. 4123.18 for the proposition that the BWC can publish rules and orders. However, R.C. 4123.18 has been repealed and the Revised Code does not grant the BWC rulemaking authority to promulgate rules that directly contradict the applicable statutes.

**{¶17}** As QMI acknowledges, the Eighth District previously considered whether to disregard the plain language of R.C. 4123.512(F), which allows a court to order an employer to pay attorneys' fees directly, and instead follow Ohio Adm. Code 4121-3-18(B)(2). *Sanford v. D & T Limousine Serv., Inc.* (1996), 108 Ohio App.3d 520. We agree with the Eighth District's conclusion in *Sanford* that there is no reason to ignore plain language of the statute. See id. at 529. QMI provides no authority in support of its assertion that *Sanford* alters the legal status of administrative rules. This Court has also interpreted R.C. 4123.512(F) to allow direct taxing of costs to an employer that contests the employee's right to participate. See, e.g., *Young v. Lorain Cty. Printing & Publishing*, 9th Dist. No. 09CA009534, 2009-Ohio-4092, at ¶2. We therefore conclude that the trial court did not err in ordering QMI to pay Mr. Nixon's attorneys' fees and costs as provided by statute.

**{¶18}** QMI's fourth assignment of error is overruled.

III.

**{¶19}** Because we have overruled each of QMI's assignments of error, we affirm the trial court's judgment.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

MOORE, J.
FRENCH, J.
CONCUR

(French, J., of the Tenth District Court of Appeals, sitting by assignment pursuant to, §6(C), Article IV, Constitution.)

APPEARANCES:

CHRISTOPHER T. CHERPAS, Attorney at Law, for Appellant.

RICHARD L. WILLIGER, Attorney at Law, for Appellee.

VINCENT T. LOMBARDO, Assistant Attorney General, for Appellee.